**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **KAREN BISHOP-STONE** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **OAKWOOD GAITHERSBURG** ) | |
| **LESSEE, LLC** ) | |
| ) | |
| **Defendant.** ) | |
| ————————————————) | **Civil Action No. WGC-13-3214** |
| **OAKWOOD GAITHERSBURG** ) | |
| **LESSEE, LLC t/u/o its insurance carrier,** ) | |
| **Liberty Mutual Insurance Company** ) | |
| ) | |
| **Defendant/Third-Party Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **EQUITY RESIDENTIAL (formerly** ) | |
| **known as ASN Gaithersburg)** ) | |
| ) | |
| **Third-Party Defendant.** ) | |
| ————————————————) | |

## MEMORANDUM OPINION

Pending before the court and ready for resolution are Third-Party Defendant ASN Gaithersburg LLC's (improperly named as Equity Residential) (hereinafter "Archstone") Motion for Summary Judgment on Third-Party Claim (ECF No. 35) and Third-Party Plaintiff Oakwood Gaithersburg Lessee, LLC's (hereinafter "Oakwood") Motion for Summary Judgment (ECF No. 36). At the request of the parties, a motions hearing was held on May 13, 2015. The disputed third-party claim concerns whether Archstone owes a duty to indemnify and defend Oakwood in the underlying tort action filed by Plaintiff Karen Bishop-Stone against Oakwood. At the

conclusion of the motions hearing, the undersigned took the matter under advisement.  The court now rules pursuant to Local Rule 105.6 (D. Md. 2014).

## Undisputed Facts and Material Inferences

In its Memorandum of Fact and Law in support of its Motion for Summary Judgment, Archstone composed a statement of undisputed facts.  *See* ECF No. 35-1 at 1-4.  With the exception of the date of Ms. Bishop-Stone's slip and fall[1], Oakwood adopted Archstone's Statement of Undisputed Facts.  *See* ECF No. 36 at 2.  The undersigned summarizes the undisputed facts as follows:

a.      On or about September 15, 2005 Archstone and Oakwood executed a Residential Master Lease ("Master Lease") whereby Oakwood leased a residential apartment property known as Oakwood Gaithersburg from Archstone, the owner of the property at the time, for a period of seven (7) years;

b.      Oakwood leased the entire property from Archstone which included but was not limited to "all common areas in or around the Building and Land (including entrances, lobbies, hallways, common restrooms, common recreational facilities, and parking facilities, if applicable), the on-site leasing and management offices of the Building, and meeting rooms and storage areas and facilities (if any)[.]"  ECF No. 12-2 at 17 (Paragraph 3.1);

c.      After leasing the entire property from Archstone, Oakwood then leased individual units to tenants.  Plaintiff Karen Bishop-Stone leased an apartment from Oakwood;

d.      Plaintiff alleges slipping and falling while walking on a sidewalk located on the property and attempting to descend concrete steps;

---

[1] In its Memorandum of Fact and Law in Support of Third-Party Defendant's Motion for Summary Judgment, Archstone states Plaintiff Karen Bishop-Stone allegedly slipped and fell on or about May 9, 2009.  ECF No. 35-1 at 2.  In its Cross-Motion Oakwood adopted Archstone's Statement of Undisputed Facts but "noted the slip & fall incident took place on May 9, 2012, not 2009."  ECF No. 36 at 2.  A review of the Complaint confirms the alleged slip and fall occurred on or about May 9, 2012.  ECF No. 1 at 2 (Compl. ¶ 4).

e.      Plaintiff claims her fall is attributable to the negligence of Oakwood, by and through its employees, servants and/or agents.  Specifically, "[Oakwood] negligently failed to maintain the steps and the artificial lighting where the Plaintiff slipped and fell, negligently failed to properly illuminate the area so that tenants and invitees, including the Plaintiff, could see where they were stepping, and negligently invited tenants to use the sidewalk and steps adjacent to the Plaintiff's apartment when they knew or should have known that the area posed a danger at night due to the poor illumination."  ECF No. 1 at 2 (Compl. ¶ 5);

f.      Archstone's third-party claims administrator conducted an initial investigation of Plaintiff's claim and found no defects with the property.  ECF No. 35-1 at 2;

g.      On October 30, 2013 Plaintiff filed a lawsuit against Oakwood alleging Oakwood's negligence caused her to slip and fall.  ECF No. 1;

h.      On May 5, 2014 Oakwood filed a Third Party Complaint (ECF No. 14) against Archstone "seeking a declaration that Archstone has a contractual duty to defend and indemnify Oakwood for Plaintiff's claims pursuant to Archstone's obligations under the Master Lease." ECF No. 35-1 at 2;

i.      The Master Lease includes provisions addressing Oakwood's obligation to Archstone and Archstone's obligation to Oakwood in the event of a third-party liability claim.

### 14.4     Indemnification

14.4.1   Tenant's Indemnity.   [Oakwood] agrees to indemnify and defend [Archstone] against, and hold [Archstone] free and harmless from, any and all losses, costs, liabilities, damages, claims, liens and expenses, including, without limitation, reasonable attorneys' fees and costs arising from claims made by third parties (collectively, "**Claims**") as a result of or incurred in connection with or arising from: (i) any Event of Default by [Oakwood] under this Lease; or (ii) the negligence or willful misconduct of [Oakwood] or its Agents, in, on or about the Premises, except to the extent caused by the negligence or willful

misconduct of [Archstone] or its Affiliates, Agents or Invitees. [Oakwood's] obligations under this subsection shall survive the termination of this Lease.

**14.4.2**   <u>Landlord's Indemnity</u>.   [Archstone] agrees to indemnify and defend [Oakwood] against, and hold [Oakwood] free and harmless from, any and all Claims as a result of or incurred in connection with or arising from: (i) any default (which remains uncured following receipt of all required notices and expiration of all applicable cure periods) by [Archstone] in the observance or performance of any of the terms, covenants or conditions of this Lease on [Archstone's] part to be observed or performed; or (ii) the negligence or willful misconduct of [Archstone], or of [Archstone's] Agents, in, on or about the Premises, except to the extent caused by the negligence or willful misconduct of [Oakwood] or its Affiliates, Agents or Invitees. [Archstone's] obligations under this subsection shall survive the termination of this Lease.

ECF No. 12-2 at 40. In summary, each party agreed to indemnify the other for its own negligence. These provisions however do not make one party liable for another party's sole negligence;

j.   The Master Lease also addresses commercial general liability insurance during the duration of the lease and the parties' respective obligations.

**15.   Insurance**
**15.1   Landlord's Insurance.**

\*   \*   \*

[Archstone], at no cost to [Oakwood], shall procure and keep in effect at all times during the Term Commercial General Liability (CGL) insurance with limits of One Million Dollars ($1,000,000) each occurrence and annual aggregate applicable to each location separately (so long as per location aggregates are available at commercially reasonable rates) and excess liability of Nine Million Dollars ($9,000,000) each occurrence and annual aggregate for bodily injury and property damage . . . covering claims where [Archstone] or [Oakwood] are deemed legally liable. [Archstone's] commercial general liability policy shall be primary as respects premises liability and [Oakwood's] general liability insurance (as outlined in <u>Section 15.2</u> below) shall be secondary,

and [Oakwood's] general liability insurance carrier shall not be required to make any contribution to [Archstone's] insurance carrier.  Notwithstanding anything to the contrary in the foregoing, to the extent [Oakwood] is deemed liable due to the gross negligence or willful misconduct of [Oakwood] or its Affiliates and Agents (other than contractors), [Oakwood's] general liability insurance shall be primary and [Archstone's] general liability policy shall be secondary and [Archstone's] general liability insurance carrier shall not be required to make any contribution to [Oakwood's] insurance carrier.

[Archstone] shall cause [Oakwood] to be named as an additional insured on the general liability insurance policies procured by [Archstone] under this <u>Section 15.1</u> . . . [Archstone] shall deliver to [Oakwood] certificates of insurance (with [Oakwood] listed as an additional insured), evidencing the above described coverage.

\*   \*   \*

[Oakwood] shall be responsible for a per claim deductible amount of $5,000 with respect to damage to the Premises covered under [Archstone's] property insurance, regardless of the amount of the actual policy deductible or self-insurance retention under such policy, provided such deductible amount shall not apply to any damage that was caused by [Archstone] or [Archstone's] Agents.  [Oakwood] shall process each claim in the same manner as claims under [Archstone's] property insurance, but shall be responsible for paying the costs and expenses associated with each such claim until such time as [Oakwood] has demonstrated to [Archstone] that it has paid out the $5,000 deductible amount of such claim.   Thereafter, [Archstone] shall be responsible for paying any such claim otherwise covered by its property insurance, to the extent of any deductible or self-insurance retention under its property insurance, subject, however to [Oakwood's] responsibility to pay for the cost of any deductibles and/or self-insurance retention amounts with respect to such claim for the repair of any damage to property caused by the gross negligence or willful misconduct of [Oakwood] or its Affiliates or Agents (other than contractors), to the extend provided in <u>Section 11</u> above.

ECF No. 12-2 at 41-42;

k.      Absent from the Master Lease is a paragraph equivalent to the above detailing which party is responsible for paying any deductible or self-insurance retention for the CGL insurance covering third-party claims where Archstone or Oakwood is deemed legally liable;

l.      The Master Lease outlines Oakwood's responsibilities with regard to insurance.

### 15.2    Tenant's Insurance.

[Oakwood], at its sole cost and expense, shall maintain during the Term, and any extensions thereof, the following insurance coverages required immediately below:

*    *    *

**15.2.2** Commercial General Liability [ ] (CGL) insurance with limits of One Million Dollars ($1,000,000) each occurrence and annual aggregate applicable to each location separately . . . and excess liability coverage with limits of Nine Million Dollars ($9,000,000) each occurrence and annual aggregate for bodily injury and property damage . . . covering claims where [Archstone] or [Oakwood] are deemed legally liable.   [Archstone's] commercial general liability policy (as outlined in Section 15.1 above) shall be primary as respects premises liability and [Oakwood's] general liability insurance shall be secondary, and [Oakwood's] general liability insurance carrier shall not be required to make any contribution to [Archstone's] insurance carrier.   Notwithstanding anything to the contrary in the foregoing, to the extent [Oakwood] is deemed liable due to the gross negligence or willful misconduct of [Oakwood] or its Affiliates or Agents (other than contractors), [Oakwood's] general liability insurance shall be primary and [Archstone's general liability policy shall be secondary and [Archstone's] general liability insurance carrier shall not be required to make any contribution to [Oakwood's] insurance carrier.

**15.2.3** Professional Liability Insurance (errors and omissions) with the following limits of liability:   Two Million Dollars ($2,000,000) per claim and in the aggregate.

[Oakwood] shall cause [Archstone] to be named as an additional insured on the general liability insurance policies procured by [Oakwood] under this Section 15.2 but only as to [Oakwood's] operations.   Prior to or contemporaneous with the execution of this Lease (and as requested by [Archstone] from time

6

to time), [Oakwood] shall deliver to [Archstone] certificates of insurance (with [Archstone] listed as an additional insured), evidencing the above described coverage. The insurance shall not be cancelable or subject to material reduction of coverage or otherwise be subject to material modification except after thirty (30) days' prior written notice to [Archstone].

ECF No. 12-2 at 43; and

m.      Plaintiff's Complaint does not allege gross negligence or willful misconduct by Oakwood. Archstone's general liability policy therefore is primary and Oakwood's general liability policy is secondary. Per the Master Lease, Oakwood's general liability insurance carrier shall not be required to make any contribution to Archstone's insurance carrier.

## STANDARD OF REVIEW

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing no genuine issue as to any material fact exists. Fed. R. Civ. P. 56(a); *Pulliam Inv. Co.*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir.

1985).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Celotex Corp.*, 477 U.S. at 323.

On those issues where the nonmoving party will have the burden of proof, it is that party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence.  *Anderson*, 477 U.S. at 256.  However, "' [a] mere scintilla of evidence is not enough to create a fact issue.'"  *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theaters, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967), *cert. denied*, 390 U.S. 959 (1968)).  There must be "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

When faced with cross-motions for summary judgment, the court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law."  *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted).  The court applies the same standard of review.  *Monumental Paving & Excavating, Inc. v. Penn. Mfrs.' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999) (citing *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment – – even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied*, 469 U.S. 1215 (1985)).

## DISCUSSION

A.      *Whether Archstone Owes Oakwood a Duty to Indemnify*?

Not surprisingly, the parties have opposing viewpoints on this matter with Oakwood claiming Archstone has a duty to indemnify per the Master Lease and Archstone denying the Master Lease imposes such a duty under the circumstances of this case.   Oakwood argues Archstone's duty to indemnify stems from the fact that Archstone is the property owner. Oakwood contends Archstone has expressly conceded primary responsibility for any alleged defect on the property it owns.

Archstone notes, at the time of Plaintiff's slip and fall, it had leased the entire property to Oakwood, who was responsible for day-to-day management of the property, which included performing repairs and maintenance.   As the owner of the property, it is not an insurer of the safety of its invitees and subtenants.   Instead, as the owner, Archstone must exercise a duty of reasonable care.   When Archstone turned over the property to Oakwood in 2005, there is no evidence of Archstone failing to use reasonable care in determining whether there were any defects on the property.   Nor is there any evidence Archstone concealed any defects on the property.   Plaintiff's alleged slip and fall occurred while Oakwood has been operating the premises for more than three and a half years.

Further, Archstone observes, Oakwood does not outline with any specificity how Archstone was supposedly negligent.   The Third-Party Complaint Oakwood filed against Archstone consists of a single count, Contribution.   Oakwood does not allege any specific acts or omissions by Archstone which purportedly caused the Plaintiff's slip and fall.   Moreover, Plaintiff's Complaint alleges negligence solely against Oakwood, who managed the property on a daily basis.

Turning to the Master Lease, Archstone agreed to indemnify Oakwood from any and all claims *resulting from Archstone's own negligence or willful misconduct*. There is not a claim of negligence against Archstone. The Master Lease does not require Archstone to indemnify Oakwood for Oakwood's *own* negligence. In light of the above, the court finds Archstone *does not have a duty to indemnify* Oakwood based on the Complaint filed by Plaintiff.

       B.       *Whether Archstone Owes Oakwood a Duty to Defend?*

In accordance with the Master Lease, Archstone procured CGL insurance with limits of $1,000,000 each occurrence and excess liability of $9,000,000. Archstone pays the premium.[2] In compliance with the terms of the Master Lease, Archstone named Oakwood as an additional insured to the CGL insurance policy. Archstone has provided Oakwood certificates of insurance reflecting Oakwood's status under Archstone's policy. Per the Master Lease, Archstone's CGL insurance policy is primary for premises liability coverage.[3]

Unlike claims covered by Archstone's property insurance, whereby the parties negotiated that Oakwood would be responsible for the deductible amount of $5,000, the Master Lease is silent on the issue of which party is responsible for the self-insurance retention ("SIR") in the amount of $500,000 for Archstone's CGL insurance policy. Archstone contends, since the Master Lease does not require it to pay "first dollar" coverage, the burden of satisfying the SIR rests with Oakwood which has day-to-day control over the property. Archstone also asserts, because it provided Oakwood with the certificates of insurance naming Oakwood as an additional insured, Oakwood was aware of the type of insurance Archstone procured. The $500,000 SIR is not a secret or a surprise to Oakwood.

---

[2] For the policy period from June 30, 2011 to June 30, 2012, the total minimum and deposit premium was $329,571. ECF No. 35-2 at 1.

[3] At this stage of the litigation Oakwood has not been deemed liable due to gross negligence or willful misconduct, which would make Oakwood's general liability insurance primary and Archstone's general liability policy secondary per the Master Lease.

Contrarily Oakwood argues Archstone, as the owner of the property, is responsible for satisfying the SIR.  Oakwood contends Archstone expressly assumed the responsibility for any and all claims from the premises.  Moreover, Archstone's course of conduct is instructive.  "Since 2005 and up to October, 2013, any personal injury lawsuits arising from the premises that have been tendered to Archstone and its predecessor, Archstone and its predecessor and liability carrier have assumed primary defense and insurance coverage."  ECF No. 36 at 8 (Flaagan[4] Aff. ¶ 5).  In short, Oakwood argues Archstone has a duty to defend which includes paying the $500,000 SIR.

Archstone asserts its previous course of conduct is irrelevant.  What is relevant is the Master Lease and what it describes as the parties' obligations to one another.  The Master Lease does not impose a "first dollar" coverage obligation upon Archstone.  Additionally, because the Master Lease contains a waiver provision, the fact that Archstone accepted the tender of personal injury lawsuits in the past does not mean Archstone is bound by such course of conduct in the future.

Archstone further notes Oakwood is asking for something it did not bargain for when the parties negotiated the Master Lease.  Oakwood specifically bargained with Archstone regarding the deductible amount per claim Oakwood shall be responsible for under Archstone's property insurance.  Oakwood could have similarly sought an agreement regarding the deductible amount per claim Oakwood shall be responsible for under Archstone's CGL insurance policy.

The court finds Archstone's arguments persuasive.  In the absence of any mandate in the Master Lease requiring Archstone to pay the CGL insurance policy's SIR, the court cannot

---

[4] Patricia Flaagan is a Risk Manager employed by R & B Realty Group, a California limited partnership doing business as Oakwood Worldwide.

impose this burden upon Archstone.  Since the Master Lease is silent on this matter, the court

turns its attention to Archstone's CGL insurance policy.

Archstone's CGL insurance policy, for the period June 30, 2011 through June 30, 2012,

via the Self Insured Retention Endorsement, describes the coverage as follows:

> We will pay sums that the insured becomes legally obligated to
> pay as damages because of "bodily injury" . . . or "property
> damage" to which this insurance applies, and which are in excess
> of the "Self Insured Retention stated in the Declarations.

ECF No. 35-2 at 32.  This endorsement further provides,

> "Self Insured Retention" means those sums that *you or any insured*
> shall become legally obligated to pay as damages because of
> "bodily injury", "property damage" or "personal and advertising
> injury" to which this insurance applies.  The amount of the "Self
> Insured Retention" is specified in the Declarations of this policy.
> The "Self Insured Retention" can only be satisfied as specified in
> Section III, Condition 10[5] hereof.

*Id.* at 37 (emphasis added).

Archstone is the Named Insured under this CGL insurance policy.  "The first Named

Insured shown in the Declarations: **1.**  Is responsible for the payment of all premiums."  ECF No.

35-2 at 22.  The insurance contract is between the insurer and Archstone (often referred to as

"you").   This policy contemplates that the SIR may be paid by either the Named Insured

(Archstone) or any insured (such as Oakwood as an additional insured).

Because the Master Lease does not mandate that Archstone must provide "first dollar"

coverage for premises liability claims and further because the Master Lease does not limit the

deductible amount Oakwood shall be responsible for, the court finds Archstone is not required to

pay the SIR before its insurer provides a defense in excess of the SIR.  As an additional insured,

---

[5] Satisfaction of Self Insured Retention - The "Self Insured Retention" under this policy must be satisfied by actual
payment by you . . . The "Self Insured Retention" under this policy shall not be satisfied by any insurance coverage
whatsoever. . . . ECF No. 32-5 at 36.

Oakwood is subject to the same SIR level as Archstone is under its CGL insurance policy.  Until

Oakwood satisfies the SIR, Archstone's CGL insurer does not have a duty to defend.

## **CONCLUSION**

For the foregoing reasons the Court finds there are no genuine issues as to any material

fact and Archstone is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  An Order

will be entered separately.

_ June 30, 2015 _____                _____/s/_____
          Date                                        WILLIAM CONNELLY
                                       UNITED STATES MAGISTRATE JUDGE